IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COLLEEN RAVESTEIN, individually and as Administrator for the Estate of JESUS HUMBERTO MUNOZ, deceased, | ) ) ) | CASE NO. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS COUNTY, NEBRASKA, WELLPATH, LLC, f/k/a CORRECT CARE SOLUTIONS, LLC, MARK FOXALL, AMBER M. REDMOND, JOHN MORRISON, WILLIAM SHEARON, JUSTIN TEETER, SETH VAN MAANEN, WILLIAM YOUNG, SHANE PETERSON, DENNIS MCFARLAND, ANTHONY ROBERTS, NICHOLAS SCHROEDER, ANDREW WORTHING, ARTURO COMACHO, DEONDRE N. HOOK, DAVID L. BARNES, TRISHA PORTREY, LPN, LORI LIMBACH, LPN, Official Does 1-10, Staff DOES 1-50, Nurse DOES 1-10 and Doctor DOES 1-10  in their individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT and JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

Plaintiff, Colleen Ravestein, individually and as the Administrator for the Estate of Jesus Humberto Munoz, and for her causes of action against the Defendants, and each of them, state and allege that at all time material hereto:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action alleging Constitutional rights violations and states claims under  42 U.S.C. § 1983, 42 U.S.C § 1988, 42 U.S.C. § 12132 as well as state statutory/common law claims arising from an assault and subsequent death of Jesus Humberto Munoz in the Douglas County Correctional Center located in Omaha, Nebraska.

2.      Defendants watched and failed to intervene Mr. Munoz's unlawful assault and subsequent deliberate indifference to Mr. Munoz's serious medical needs in violation of the Fourth and Eighth Amendments to the United States Constitution and the laws of the State of Nebraska.

3.      Defendants knowingly and with deliberate indifference to Mr. Munoz's constitutional rights denied Mr. Munoz's rights to be free from excessive force and cruel and unusual punishment, made actionable pursuant to 42 U.S.C. § 1983 and *Monell*.

4.      All Defendants acted under color of state law and proximately caused the deprivation of Mr. Munoz's federally protected and state law rights.

## PARTIES

5.      Plaintiff, Colleen Ravestein, are residents of Pella, Marion County, Iowa, and the grandmother of the decedent, Jesus Humberto Munoz.

6.      The decedent, Jesus Humberto Munoz, (hereafter "Decedent" or "Mr. Munoz") was born on May 19, 1997, and died on January 25, 2020.

7.      That on August 11, 2020, Plaintiff was duly appointed as the Administrator of the Estate of Jesus Humberto Munoz, by the District Court of Marion County, Iowa, Case No. 05631 ESPR043269.  A copy of such Letters of Appointment is attached hereto marked as **Exhibit "A"**, and incorporated herein by reference.

8.      Plaintiff brings this action in her capacity as the Administrators for the Estate of Jesus Humberto Munoz, for the exclusive benefit of themselves and next of kin pursuant to Neb. Rev. Stat. § 30-809 and 30-810, in their capacity as Special Administrator for Mr. Munoz's Estate, and in their own individual capacity.

9.    Defendant, Douglas County, Nebraska (hereinafter referred to as "Douglas County"), is a political subdivision, organized and existing by virtue of the laws of the State of Nebraska.

10.    Douglas County Department of Corrections (hereinafter referred to as "DCDC") is an agency of Defendant Douglas County and owns, operates, manages and/or controls the Douglas County Correctional Center (hereinafter referred to as "DCCC"), a correctional facility located at 710 S. 17th Street, Omaha, Douglas County, Nebraska.

11.    Defendant, Wellpath, LLC, f/k/a Correct Care Solutions, LLC (hereinafter referred to as "Wellpath") is a foreign limited liability company qualified to do and is doing business in the State of Nebraska with its principal place of business located in Nashville, Tennessee.

12.    In 2018, Correct Care Solutions, LLC was purchased by H.I.G. Capital and merged with San Diego-based Correctional Medical Group Companies to form a new company called Wellpath.

13.    Defendant Wellpath provides medical and behavioral health services to local, state and federal correctional facilities throughout the United States and is the holder of a contract to provide medical services to inmates at DCCC.

14.    Defendant Mark Foxall was the Director of Corrections for DCCC and Defendant Amber M. Redman was the Deputy Director for DCCC, and were both in charge of DCCC. Defendants Foxall and Redman were officials with final authority regarding policies, customs, and/or procedures at DCCC and with final authority regarding the hiring, training, screening, supervision, discipline, retention, counseling, and control of DCCC's deputies, correctional officers, other Douglas County or DCCC employees/agents at DCCC, contracted entities of

Douglas County at DCCC, and employees/agents of contracted entities of Douglas County at DCCC including, but not limited to, Wellpath and Wellpath employees/agents.

15.      Defendants John Morrison, William Shearon, Justin Teeter, Seth Van Maanen, William Young, Shane Peterson, Dennis McFarland, Anthony Roberts, Nicholas Schroeder, Anthony Roberts, Andrew Worthing, Arturo Comacho, Deondre N. Hook and David L. Barnes individual wardens, correctional officers, guards, or other jail staff employed by Defendant Douglas County and/or Defendant Wellpath who were in contact with Mr. Munux during the time that is the subject matter of the present case.

16.      Defendants Trisha Portrey, LPN, and Lori Limbach, LPN, were physicians, nurses or other medical staff employed by Defendant Wellpath and/or Defendant Douglas County and who were responsible for Mr. Munoz's medical care treatment while being detained at DCCC during the time that is the subject matter of the present case

17.      Defendants Nurse Does 1-10 are individual non-physician medical staff employed by Defendant Wellpath and/or Defendant Douglas County and who were responsible for Mr. Munoz's medical care and treatment while being detained at DCCC during the time that is the subject matter of the present case.  These individuals will be identified during discovery and added as named defendants as soon as the individual identities are known.

18.      Defendants Doctor Does 1-10 are individual physicians employed by Defendant Wellpath and/or Defendant Douglas County and who were responsible for Mr. Munoz's medical care and treatment while being detained at DCCC during the time that is the subject matter of the present case.  These individuals will be identified during discovery and added as named defendants as soon as the individual identities are known.

19.     Defendants Official Does 1-10 are Defendant Douglas County officials with final policy/decision-making authority with respect to the provision of medical/mental health care and treatment at DCCC.  These individuals will be identified during discovery and added as named defendants as soon as the individual identities are known

20.     Defendants Staff Does are the individual law enforcement officers, wardens, guards, or other staff who are employed by Douglas County and/or Wellpath who were in contact with Mr. Munoz during the time that is the subject matter of the present case.  These individuals will be identified during discovery and added as named defendants as soon as the individual identities are known.

21.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES and therefore sue these defendants by such fictitious names.

22.     Plaintiffs believe that each defendant so named is responsible in some manner for the injuries, damages and subsequent death suffered by Mr. Munoz as described herein.

23.     Any reference in this Complaint to any named entity defendant, any individually named defendant, the terms "defendant", "defendants", "Defendant" and/or "Defendants" also refers to Defendants DOES named above.

## JURISDICTION AND VENUE

24.     Jurisdiction in this Court is proper under 28 U.S.C. §§ 1332, 1332 and 1343, as this action arises under the United States Constitution, and more particularly under the provisions of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and under federal law, particularly the Civil Rights Act, 42 U.S.C § 1983, and supplemental jurisdiction for related state-law claims under 28 U.S.C. § 1367.

25.     Among other claims, Plaintiff institutes a state tort claim against Defendant Douglas County pursuant to Neb. Rev. Stat. §§ 13-901 *et seq*., the Act.

26.     Plaintiff complied with the provisions of the Act with respect to providing notice of their tort claim and withdrawing the same for consideration.  Specifically, Plaintiff filed a claim by sending a letter via email and by certified mail to Defendant Douglas County's Clerk on February 26, 2020.  Defendant Douglas County acknowledged receipt of Plaintiff's claim via regular mail dated March 6, 2020.  Thereafter, on September 22, 2020, Plaintiff sent a letter via certified mail and also via email to Defendant Douglas County's Clerk and Defendant Douglas County's Legal Department, withdrawing her claims for consideration.

27.     Venue in this Court is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the State of Nebraska.

## NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

28.     Defendants Douglas County and Wellpath were qualified for coverage under the Nebraska Hospital-Medical Liability Act, § 44-2801 *et seq.*, as amended (hereinafter "the Act") and Plaintiffs demand strict proof of any claim, by Defendants Douglas County and Wellpath, of coverage under and in compliance with the Act.

29.     Notwithstanding any filing by the Defendants Douglas County and Wellpath for special benefits, privileges and protections pursuant to the Act, Plaintiffs allege that the criteria established by the Act do not promote the health, safety or general welfare of the public and serve no public purpose in that the Act limits the amount of recovery available to claimants such as the Plaintiffs and Decedent without any reasonable basis or relationship to the injuries sustained by the Plaintiff and Decedent, and therefore, is unconstitutional, in whole or in part, as it violates the 7th and 14th Amendments to the Constitution of the United States, as well as the following

provisions of the Constitution of the State of Nebraska:  Article 1, Sections 1, 3, 6, 13, 16, 21, 25, 26; Article II, Section 1; Article III, Section 18; Article V, Section 2; Article VI, Section 1; and Article XII10(c).

30.     Plaintiffs affirmatively waive their right to a panel review and have elected to file this action directly in the United States District Court for the District of Nebraska.

31.     In further compliance with the Act, a copy of this Complaint is being served upon the Director of Nebraska Department of Insurance and upon the Attorney General of the State of Nebraska, by certified mail, as provided by law

## GENERAL ALLEGATIONS

32.     Defendant Douglas County employs various staff, including, but not limited, to correction officers, law enforcement officers, employees, agents, representatives, and other correctional and law enforcement officers, and such staff were acting in the course and scope of their employment or other business relationship with Defendant Douglas County and were under Defendant Douglas County's supervision, direction and control.

33.     Defendant Wellpath employs various staff, including, but not limited, to correction physicians, nurses, employees, agents, representatives, and other medical or healthcare professionals, and such staff were acting in the course and scope of their employment or other business relationship with Defendant Wellpath and were under Defendant Wellpath's supervision, direction and control.

34.     Defendants, and each of them, were engaged in a joint venture, employment, and/or agency relationship with regard to providing medical care and treatment to inmates at DCCC, including Mr. Munoz, in Omaha, Douglas County, Nebraska.

35.    Defendants' actions and/or inactions, and each of them, described more fully herein, were committed in the course and scope of Defendant Douglas County and Wellpath's venture, employment, and/or agency relationship with each other.

36.    Any and all actions undertaken by Defendants Douglas County and Wellpath employees, authorized agents, apparent agents and/or representatives constituted actions under color of state law.

37.    The unconstitutional conduct alleged herein was carried out in accordance with the official policies, procedures, and customs of Defendants Omaha, Douglas County and Wellpath.

38.    All Defendants acted in concert and conspiracy and were and are jointly and severally responsible for the harm and injuries caused to Mr. Munoz

39.    Defendant Douglas County maintained constitutionally deficient screening policies and procedures that were inadequate to inmates, like Mr. Munuz, from serious medical conditions suffered by Mr. Munoz, and maintained unconstitutional policies and procedures for managing individuals suffering from similar medical conditions.

40.    Defendant Douglas County failed to adequately train and/or supervise its personnel and contracted-for providers with regard to complying with constitutionally minimal rights of confined persons to medical care, food, water, humane conditions of confinement, and the right to be free from excessive force, including, but not limited to, Defendant Douglas County's deliberate choice not to provide training on regarding detaining individuals with serious medical conditions and failing to provide training on managing and responding to inmates suffering from serious medical conditions.

41.    Defendant Douglas County engaged in a pattern, practice, or custom of unconstitutional conduct toward confined persons with serious medical and mental health needs,

including, but not limited, to a pattern, practice, or custom of not securing medical care for inmates suffering from physical or mental injuries as well as a pattern, practice or custom of using objectively unreasonable and excessive force on such individuals.

42.     Defendant Douglas County entered into a contractual arrangement with Defendant Wellpath to provide medical care and treatment to inmates at DCCC.

43.     Defendant Douglas County had the power and the ability to monitor the contract performance of Defendant Wellpath and the duty to ensure that inmates and detainees received constitutionally adequate medical care.

44.     Defendant Douglas County did not adequately monitor the performance of Defendant Wellpath and allowed Defendant Wellpath's ongoing practice of substandard medical care continue, putting the lives of inmates and detainees, including Mr. Munoz, at risk.

45.     Defendant Douglas County knew that the aforementioned policies, practices and customs posed a substantial risk of serious harm to inmates and detainees like Mr. Munoz, and it was obvious that such harm would occur; nevertheless, Defendant Douglas County failed to take reasonable steps to alleviate those risks for harm.

46.     There is an affirmative causal link between the above described deliberate indifference and objectively unreasonable force used on Mr. Munoz and the policies, practices, and customs described herein.

47.     That the contract between Defendants Douglas County and Wellpath creates perverse incentives on the part of Defendant Wellpath in that Defendant Wellpath makes more money under the contract when they refuse to provide inmates with necessary medical care.

48.     Based on the desire for profit, Defendant Wellpath enacted policies and procedures designed to delay or obfuscate the diagnosis of any medical condition of inmates at DCCC.

49.     Even inmates who have already been diagnosed with a condition by outside medical providers are regularly denied medications and treatments desperately needed to treat chronic and life threatening conditions.

50.     Defendant Wellpath has enacted policies which deny medically necessary "on-site" diagnosis and treatment to inmates such as Mr. Munoz and has enacted policies which deny medically necessary "off-site" diagnosis and treatment based primarily on the desire to save costs rather than legitimate medical or security considerations.

51.     These policies created a financial disincentive to provide the constitutionally required medical care to inmates, including Mr. Munoz in the present matter.

52.     Because of this financial disincentive, upon information and belief, Defendant Wellpath budgeted extremely low amounts for outside medical care and for prescription medications, which resulted in a pattern and practice of denying medical care to inmates, such as not taking inmates to the hospital and not giving inmates needed medications, as was done in the present matter to Mr. Munoz.

53.     Defendant Wellpath maintained unconstitutional policies, customs and training that violate the Eighth Amendment, to include, but not limited, to a written contractual policy of deliberately indifferent low staffing and under-budgeting inmate medical care, under-stocking or not timely securing inmates' necessary prescription medications, a custom of disregarding inmates' medical complaints as faked or exaggerated without ruling out serious medical conditions that could lead to substantial injury or death, and training regarding the same, and generally a widespread custom of disregarding or ignoring serious medical conditions.

54.     Defendant Wellpath knew of systemic system-wide deficiencies that have caused and continue to cause significant harm to inmates at DCCC, including Mr. Munoz, yet they have failed to take reasonable measures to abate this impermissible risk of harm.

55.     For cost saving reasons, Defendant Wellpath frequently enters into contractual arrangements that do not provide adequate nurse or physician staffing, or sufficient access to higher level medical provider time to meet Constitutional requirements for care.

56.     Defendant Wellpath has a significant history establishing that Defendant Wellpath and its predecessors are and were deliberately indifferent in its policies, customs and practices with respect to the medical needs of inmates, including, but not limited to, disregarding serious complaints as faked, using nurses to diagnose outside their scope, refusing or delaying provisions of medications, and failing to provide timely treatment to medical conditions, causing serious injury or death across various illnesses.

57.     Based on the actions of Defendant Wellpath, and the refusal of Defendant Wellpath to hire sufficient medical staff, DCCC is critically understaffed, and this lack of staff has led Defendant Wellpath to engage in unsafe practices for the medical care and treatment of inmates, including, but not limited, to Mr. Munoz.

58.     Defendant Douglas County has failed to alleviate the worsening medical situation at DCCC, has failed to supervise Defendant Wellpath, and has failed to enforce the terms of the agreement with Wellpath in order to provide adequate medical care and treatment to inmates such as Mr. Munoz.

## STATEMENT OF FACTS

59.     On October 10, 2019, Decedent was booked into DCDC for Violation of Probation for a Gun Possession charge on November 13, 2015, and was immediately directed for Mental Health Evaluation[1].

60.     On October 12, 2019, Decedent requests Wellbutrin and states he was having depression issues.

61.     On October 15, 2019, Decedent reported to medical staff that he had received inpatient treatment in Bakersfield, California, and Decedent admitted to substance abuse.

62.     On October 26, 2019, Decedent put in a Kite stating he was having negative effects from his medication and requested Hydroxyzine, and medical staff responded by stopping Abilify.

63.     On October 28, 2019, Decedent put in a Kite requesting Wellbutrin and stated it would help his condition.

64.     On October 31, 2019, medical staff reports Decedent manic and argumentative, Decedent agreed to take his medication and Decedent stated to medical staff he had ADHD and Bi-Polar disorders.

65.     On November 1, 2019, medical staff completed paperwork for a Board of Mental Health Order, however, such request was denied on November 4, 2019.

66.     On November 13, 2019, Mr. Munoz admitted to a violation of probation and was sentenced to be imprisoned at DCCC for a period of 180 days with 33 days credit for time served.

67.     On November 16, 2019, Decedent tells medical staff that his delusions tells him to do mundane things like drink water or eat more food and reported having thoughts of killing himself in the last month, but did not think about how to do it.

---

[1] Plaintiffs rely, in part, to Grand Jury proceedings from the case of In the Matter of the Grand Jury Proceedings Regarding the Death of Jesus Munoz, Douglas County District Court Case No. MS20-99, which includes testimony from Ashley Jenkins, Todd Cruise and Michelle Elieff, M.D., as well as the death investigation Case Report and Autopsy Pathology Report generated as a result of the death of the Decedent in the present matter.

68.     On December 5, 2019, medical staff reported Decedent's behavior as polite, but delusional.

69.     On December 6, 2019, Decedent was ordered to his cell for yelling and refused order and was subsequently placed in lock down pending hearing.

70.     On January 3, 2020, Decedent takes his last dose of Risperdal, and Decedent refused the medication after this date.

71.     On January 10, 2020, Decedent was refusing to be moved and assaulted corrections officers, placed in lock down for major misconduct pending hearing and moved to medical mod for the last time.

72.     On January 19, 2020, Decedent was reported by medical staff as having auditory and verbal delusions and injured his foot by kicking a steel object.  Staff received direction to place Decedent in restraint chair if self-harming continued and only once in the chair could sedation be used.

73.     On January 22, 2020, four (4) Defendant guards entered Decedent's cell with rubber gloves and Decedent handed over a blanket.

74.     A subsequent altercation ensued and the guards wrestled with Decedent and the guards were observed by video as repeatedly striking the Decedent, however, it is unknown where Decedent was being struck or what caused Defendant guards to strike Decedent due to the many Defendant guards standing in the door way and therefore, it was not apparent from the video of the altercation as to what was transpiring in Decedent's cell.

75.     Guards continued to struggle with Decedent and medical staff called for assistance.

76.     Decedent was then walked out in handcuffs by two Defendant staff and other Defendant staff followed.

77.     Defendant staff walked Decedent to the shower area and allowed Decedent to wash his face, however, the view from the video of the incident was obscured.

78.     Decedent was then brought back to the center of the room where Decedent was allowed to sit in a chair and the incident appeared to be calm throughout the movement from the shower to the chair.

79.     Medical staff evaluated Decedent and after evaluation, Decedent was escorted in handcuffs to a different cell and it appeared Decedent was calm and routine during this time.

80.     Defendants Morrison, Shearon, Teeter, Van Maanen, Peterson, Young, William, McFarland, Roberts, Schroeder, Worthing, Comancho, Portrey and Limbach were all present and involved during this altercation.

81.     On January 24, 2020, Decedent was reported as resting well but with a return of suicidal ideations, and begins drinking a lot of water at 7:00 p.m.

82.     From 7:42 p.m. through 8:45 p.m. on January 24, 2020, Decedent is observed on numerous occasions spitting up fluid.

83.     At 8:55 p.m. and 9:02 p.m. on January 24, 2020, Decedent defecates on the back of the toilet.

84.     At 9:04 p.m. on January 24, 2020, Decedent vomits a large amount of clear fluid with small chunks.

85.     From 11:00 p.m. through 11:30 p.m. on January 24, 2020, staff checks in on Decedent and observes Decedent lying down in his cell.

86.     At 11:38 p.m. on January 24, 2020, Decedent slips and falls a couple of times in his cell, Decedent's behavior changes and it is observed to be slower and impaired, and Decedent lays down on the cell floor face down.

87.     From 12:00 a.m. through 1:15 a.m. on January 25, 2020, Defendant Hook logs a check on Decedent and observed Decedent on numerous occasions as observed lying down in his cell.

88.     At no time did it appear that Decedent hit his head or fall in a way that would lead to substantial injury.

89.     At 1:23 a.m. on January 25, 2020, Defendant Barnes checked on Decedent and Decedent was lying on the ground but did not appear to be in distress.

90.     At 1:26 a.m. on January 25, 2020, Decedent stops moving.

91.     At 1:27 a.m. on January 25, 2020, red fluid was coming from under Decedent's head.

92.     At 1:30 a.m. on January 25, 2020, Defendant Hook observed Decedent lying down in the cell with red foam coming out of his mouth, however, staff believed Decedent was still breathing at that time.

93.     At 1:33 a.m. on January 25, 2020, medical staff entered Decedent's cell to check on his pulse and at 1:34 a.m., a Code Green was declared.

94.     At 1:50 a.m. on January 25, 2020, Decedent was declared deceased.

95.     Defendant staff suspected Decedent fell from his bed in a suicide attempt and suffered blunt force trauma and their primary impression of Decedent was death and secondary was traumatic injury, however, subsequent death investigation of Decedent's death determined there were no injuries on Decedent that appeared significant enough to cause Decedent's death.

96.     Subsequent autopsy findings determined there was no trauma related to Decedent's death.

97.    Final autopsy report indicates the cause of Mr. Munoz's death was medical complications of hyponatremic dehydration and toxicology detected antipsychotic olanzapine.

98.    The autopsy report indicated the following injuries to Mr. Munoz's body:

There are minor injuries on the body including a 1 x 1/4 inch curvilinear tan-red abrasion of the right temporal scalp, a 3/8 inch tan-red abrasion of the right upper eyelid, a 1-1/2 x 1/2 inch tan-red abrasion of the right cheek, a 1/4 inch abraded contusion of the left lateral upper lip, a 1 x 1/8 inch abrasion of the left upper back, a 1/8 inch abrasion of the left upper back, a 2-1/4 x 5/8 inch scabbed abrasion of the right upper back/shoulder, a 1-1/4 inch linear abrasion of the left lower back, a 1-1/2 x 3/8 inch scabbed abrasion/pink scar of the left flank, a 1 x 1/4 inch scabbed healing abrasion of the right flank, punctate abrasions over a 3-1/2 x 2-1/2 inch area of the left distal buttock, a 5/8 inch scabbed healing abrasion of the right posterior upper arm, a 1/8 inch abrasion of the right posterior upper arm, a 1/8 inch healing abrasion of the right radial dorsal hand, a 1 inch healing abraded contusion of the right middle finger knuckle, a 1/4 inch healing lesion of the right posterior thigh, a 1/4 inch abrasion of the left posterior elbow, a 5/8 inch contusion of the right hip, a 3/8 inch contusion of the right hip, a 1/2 inch healing abraded contusion of the left dorsal hand, a 1/8 inch punctate abrasion of the left dorsal middle finger, a 4 x 1 inch contusion of the left anterior shin, a healing left great toe subungual hematoma, and a 3/4 x 1/2 inch healing abrasion of the right radial wrist.

99.    Defendants violated Mr. Munoz's constitutional right to be to be free from excessive force and acted with deliberate indifference to Mr. Munoz's serious medical needs and subjected him to inhumane conditions of confinement that amounted to punishment, and all of the acts and omissions committed by all of the individual defendants named herein, including DOES, were committed with malice and/or with reckless disregard of Mr. Munoz's constitutional rights.

100.    As a result of the aforementioned acts and omissions, Mr. Munoz's rights were violated and he suffered severe and significant physical and emotional injuries and subsequent death for which the Defendants are jointly and severally liable.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S. CODE § 1983
## EXCESSIVE FORCE

101.    Defendants had a duty to Mr. Munoz to provide an environment that is safe for all persons confined therein, to take reasonable measures to guarantee inmate safety by protecting them from attacks by guards, employees and other prisoners and to comply with the standards for jails in Nebraska promulgated by the Nebraska Department of Corrections.

102.     Defendants have, under color of law, deprived Mr. Munoz of rights, privileges, and immunities secured to him by the Fourth and Eighth Amendments to the United States Constitution, including the right to be free from excessive force and assaults, and the right to be free from deprivations of liberty without due process of law.

103.     Defendants deprived Mr. Munoz of his constitutional rights when Defendant guards deliberately used excessive force, assisted in the use of excessive force and/or deliberately failed to intervene and prevent the use of excessive force by assaulting Mr. Munoz.

104.     Defendant guards knew that the use of such excessive force was unlawful, excessive, unreasonable, and would cause significant injury to Mr. Munoz.

105.     Defendants had the opportunity and means to prevent such use of excessive force and failed to protect Mr. Munoz by failing to prevent and intervene the use of such excessive force.

106.     Defendants permitted, encouraged, tolerated and/or knowingly acquiesced to an official pattern, policy or practice of the Defendants' employees, agents and contractors violating the constitutional rights of inmates, including Mr. Munoz.

107.     Defendants had a duty to screen applicants for hire at DCDC and DCCC, retention at DCDC and DCCC or to discharge from its employ those employees who were not fit, suitable, properly trained and instructed, that constituted a potential menace, hazard, or danger to the public, those with vicious propensities and those with emotional, physical, psychological racists, biased and/or physiological traits or characteristics unsuitable, unstable, or contradicted for such employment.

108.     Defendants had a duty to sufficiently hire, train and retain personnel within DCDC and at the DCCC and at the supervisory, and lower ranked levels so as to sufficiently discipline,

supervise, and put into effect appropriate rules applicable to the duties, behavior and activities of their servants, agents, prison guards, jail/detention center employees and/or personnel.

109.    Upon information and belief, Defendants assaulted Mr. Munoz, failed to properly supervise Mr. Munoz, failed to protect and to intervene and stop the illegal acts being taken against him, were improperly trained, supervised and retained by Defendants Douglas County and Wellpath.

110.    Defendants were on notice of a pattern of unconstitutional acts committed by Defendants' agents and employees, Defendants demonstrated a deliberate indifference or tacit authorization of the offensive acts, Defendants failed to take sufficient remedial action, and such failure proximately caused Mr. Munoz to suffer injuries that lead to his death, without fault or contribution by Mr. Munoz.

111.    Defendant Douglas County made a deliberate choice to turn a blind eye and/or failed to oversee its employees to the unconstitutional acts of its employees, and therefore, are liable for the unconstitutional acts of its employees.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S. CODE § 1983**
**INDIFFERENCE TO MEDICAL NEEDS**

112.    Mr. Munoz was an inmate in the custody of Defendant Douglas County at DCCC and under the direct supervision of Defendants Douglas County and Wellpath.

113.    Defendant Douglas County was responsible for Mr. Munoz's well-being as the contracting government agency responsible for overseeing and operation of the medical care and treatment at DCCC.

114.    As Mr. Munoz was in the custody and control of Defendants Douglas County and Wellpath and its agents and employees, Mr. Munoz did not have the ability to obtain medical care

and treatment on his own or to provide for his own well-being, and, therefore, Defendants were under a constitutional duty to provide Mr. Munoz with the basic necessities of life which include, but are not limited to, food, shelter and proper medical care and treatment.

115.    Defendants' acts and omissions as alleged more specifically herein breached this constitutional duty and violated Mr. Munoz's clearly established rights under the Eighth Amendment to the United States Constitution, as the Defendants were deliberately, consciously and intentionally indifferent to Mr. Munoz's obvious, serious medical needs.

116.    Defendants' acts and omissions as alleged herein were consciously, deliberately and intentionally indifferent to the serious medical needs of Mr. Munoz, and, as a direct and proximate cause of this indifference, Mr. Munoz suffered tremendous emotional and physical injury and subsequent death.

117.    Upon detention, Defendants were aware that Mr. Munoz suffered from a serious medical condition and required proper nutrition, medical assessment and treatment.

118.    Despite Defendants' knowledge of the Mr. Munoz's condition, Defendants deliberately and intentionally failed to provide Mr. Munoz with these basic necessities.

119.    Defendants knew and disregarded or should have known the risk to Mr. Munoz's health and safety that would be created by the failure to timely supply proper medical care and treatment to Mr. Munoz.

120.    Defendants, with knowledge of Mr. Munoz's serious and obvious medical needs and with deliberate indifference to such medical needs, have acted or failed to act in such a way as to deprive Mr. Munoz of necessary and adequate medical care, thereby endangering Mr. Munoz's well-being, and such acts and omissions of Defendants violated the rights secured to Mr. Munoz by the Eighth Amendment to the United States Constitution.

121.    Defendants Douglas County and Wellpath, including their agents and employees, with knowledge of Mr. Munoz's serious medical needs and with deliberate indifference to such medical needs, have acted or failed to act in such a manner as to prevent Mr. Munoz from obtaining timely and adequate medical treatment and to prevent needed medical treatment and care from reaching Mr. Munoz, thereby endangering Mr. Munoz's health and well-being, and such acts and omissions by Defendants violate rights secured to Mr. Munoz by the Eighth Amendment to the United States Constitution.

122.    Defendants, including Wellpath, its agents and employees, with knowledge of Plaintiff's serious medical needs, had a constitutional duty under the Eighth Amendment to the United States Constitution to provide needed medical care to inmates at the DCCC, including Mr. Munoz, in conformity with the standards for delivery of such medical care in the State of Nebraska.

123.    Defendants, knowing of Mr. Munoz's serious medical needs and knowing also of the inadequacies and deficiencies in DCDC's medical facilities, staffing and procedures at DCDC, had a constitutional duty to establish and implement policies, practices and procedures designed to assure that Mr. Munoz received medical care and treatment in conformity with the standards of delivery of such medical care and treatment in the State of Nebraska.

124.    Defendants, knowing of the serious medical needs of Mr. Munoz, and with deliberate indifference to the inadequacies and deficiencies in DCDC's medical facilities, staffing and procedures at the DCDC, failed and neglected to establish and implement policies, practices and procedures designed to assure that Mr. Munoz received proper medical care and treatment.

125.    Defendants, knowing of the serious medical needs of Mr. Munoz, had a constitutional duty to instruct, supervise and train their employees and agents to assure the delivery of proper medical care and treatment to Mr. Munoz consistent with the standards of medical care

and treatment in the State of Nebraska, and have failed and neglected to establish and implement proper training, supervision and monitoring programs designed to assure that Mr. Munoz received proper medical care and treatment.

126.   Defendants permitted, encouraged, tolerated and/or knowingly acquiesced to an official pattern, policy or practice of the Defendants' employees, agents and contractors violating the constitutional rights of inmates, including Mr. Munoz.

127.   The actions of the Defendants and other agents, employees and contractors of Defendants Douglas County and Wellpath complained of herein were unjustified, unreasonable and unconstitutional, and constituted a violation of Mr. Munoz's clearly established rights, privileges and immunities guaranteed to her by the Eighth Amendment to the United States Constitution which include but are not limited to the following:

  a.   Freedom from cruel and unusual punishment;

  b.   Freedom from deprivation of life and liberty without due process of law;

  c.   Freedom from confinement without the provision for adequate medical care and treatment;

  d.   Freedom from arbitrary government action which is so outrageous as to shock the conscience of a civilized society; and

  e.   Freedom from intentional discrimination on the basis of physical and mental impairment.

128.   Defendants, and each of them including DOES, are directly liable for the violation of Mr. Munoz's civil rights due to the following policies, practices or customs of Defendants which were in effect at the time of this incident and which were the underlying cause of Mr. Munoz's injuries and damages:

  a.   Defendants Douglas County and Wellpath failed to adequately and properly train and educate their employees, agents and contractors with respect to the proper care and treatment of inmates, responding to medical complaints of inmates, evaluating

21

medical complaints of inmates, and seeking emergency medical treatment for inmates, with deliberate indifference and reckless disregard to the welfare of inmates, including Mr. Munoz;

b. Defendants Douglas County and Wellpath failed to adequately monitor and evaluate the performance of their agents, employees and contractors with respect to the proper care and treatment of inmates, responding to medical complaints of inmates, evaluating medical complaints of inmates, and seeking emergency medical treatment for inmates, with deliberate indifference and reckless disregard to the welfare of inmates, including Mr. Munoz;

c. Defendants Douglas County and Wellpath failed to properly fund and staff the DCCC medical clinic, to ensure an appropriate amount of licensed, trained and qualified medical professionals are present to provide proper medical treatment to high-risk patients, with deliberate indifference and reckless disregard to the welfare of inmates, including Mr. Munoz;

d. Defendants Douglas County and Wellpath have a policy, practice or custom of exonerating their employees, agents and/or contractors of wrongdoing and/or misconduct in order to escape liability, and thereby create an atmosphere where illegal and unconstitutional behavior is condoned, tolerated or approved, with deliberate indifference and reckless disregard to the rights of inmates, including Decedent; and

e. Defendants Douglas County and Wellpath have established official policies and procedures that result in a delay of timely and needed medical care for inmates with serious medical needs, including Mr. Munoz, with deliberate indifference and reckless disregard to inmates, including Mr. Munoz.

129.    As a result of the allegations contained herein, the individual Defendants, including Defendants DOES, are liable under 42 U.S.C. § 1983 for violating Mr. Munoz's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs and otherwise subjecting Mr. Munoz to inhumane conditions of confinement that amounted to punishment.

130.    As a direct and proximate result of Defendants' deliberate indifference, and each of them including DOES, to the risk of deprivation of Mr. Munoz's constitutional rights, Mr. Munoz sustained substantial and permanent injuries and related damages and resulting death as described below.

131.    Defendants Douglas County and Wellpath made a deliberate choice to turn a blind eye and/or failed to oversee its employees to the unconstitutional acts of its employees, and therefore, are liable for the unconstitutional acts of its employees

### THIRD CAUSE OF ACTION
### STATE LAW CLAIM – NEGLIGENCE

132.    While being detained at DCCC, Mr. Munoz, as an inmate, was deprived of normal opportunities to seek medical care and treatment and was completely reliant on Defendants to provide her medical care.

133.    Defendants knew that Mr. Munoz had a history of mental illness, agitation and hyperactive behavior.

134.    Defendants Douglas County and Wellpath had a duty to provide proper medical care to Mr. Munoz, an individual in the custody and control of DCCC, until Mr. Munoz was released or transferred and could be cared by other medical care providers.

135.    Defendants Douglas County Wellpath breached their duty to provide Mr. Munoz with proper medical care in one or more of the following particulars:

a.    Drafting and entering into a contract with created financial incentives for Defendant Wellpath to wrongly deny care to inmates, then failing to supervise and enforce Defendant Douglas County's contract with Defendant Wellpath, and failing to require Defendant Wellpath to provide proper care to individuals incarcerated or held at DCCC such as Mr. Munoz;

b.    Failing to properly supervise Defendant Wellpath, and/or or provide oversight for Defendant Wellpath, in its provision of medical care;

c.    Failing to train employees of DCCC to respond to instances of misconduct or poor medical care which they witness;

d.    Failing to provide for proper independent review of any denial of treatment by Defendant Wellpath; and

e.    Failing to secure proper treatment for Mr. Munoz.

23

136.    Defendants, and each of them, are vicariously liable for the negligence of their employees, agents and representatives, including, but not limited to, under the doctrine of *respondeat superior*, all theories of agency, and/or all theories of joint venture.

137.    As a direct and a proximate result of Defendants Douglas County and Wellpath's negligence, and each of them, Mr. Munoz sustained substantial and permanent injuries and related damages and resulting death as more specifically described below.

## FOURTH CAUSE OF ACTION
## STATE LAW CLAIM - MALPRACTICE

138.    Defendants undertook to render proper care and assistance to Mr. Munoz and that then and there it became their duty to exercise reasonable care to insure that Mr. Munoz received proper care, monitoring and attention while receiving medical care and treatment at DCCC.

139.    Defendants owed a duty to Mr. Munoz to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers, physicians and members of their respective professions engaged in a similar practice.

140.    Defendants breached their duty to Mr. Munoz to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers, physicians and members of their respective professions engaged in a similar practice, and were negligent in one or more of the following particulars:

a.  In failing to communicate and deliver proper in-house education to their employees relevant to the issues within the case;

b.  In failing to provide appropriate safety precautions and provide a safe and protective environment for Mr. Munoz;

c.  In failing to have proper education, training and experience to properly supervise Mr. Munoz;

d.  In failing to appropriately and properly manage, diagnose, evaluate, and treat Mr. Munoz;

24

    e.   In failing to use ordinary care under the circumstances;

    f.   In failing to provide Mr. Munoz with proper medical care and treatment;

    g.   In failing to provide appropriate medication for Mr. Munoz's illness and transfer Mr. Munoz to a facility where appropriate medication could be provided;

    h.   In failing to comply with appropriate protocols, policies, procedures and guidelines relevant to the issues within the case; and

    i.   Violating State and Federal regulations concerning care and treatment of Mr. Munoz and potentially other patients incarcerated or detained at DCCC.

141.    Defendants, and each of them, are vicariously liable for the negligence of their employees, agents and representatives, including, but not limited to, under the doctrine of *respondeat superior*, all theories of agency, and/or all theories of joint venture

142.    As a direct and a proximate result of Defendants' negligence, and each of them, Mr. Munoz sustained substantial and permanent injuries and related damages and resulting death as more specifically described below.

### FIFTH CAUSE OF ACTION
### ASSAULT AND BATTERY

143.    Mr. Munoz was wrongfully assaulted and battered without just or probable cause of provocation by Defendants agents and employees.

144.    As a direct and a proximate result of such wrongful assault, Mr. Munoz sustained substantial and permanent injuries and related damages and resulting death as more specifically described below.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

145.    Defendants conduct and actions were intentional, reckless, and done with deliberate indifference to Decedent's serious medical needs which subjected her to inhumane conditions of confinement that amounted to punishment.

146.    Defendants' actions and conduct were so outrageous in character and so extreme as to go beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

147.    Defendants' actions and conduct caused Decedent to suffer emotional distress so severe that no reasonable person should be expected to endure it.

148.    As a direct and a proximate result of Defendants' action and conduct, and each of them, Decedent sustained substantial and permanent injuries and related damages and resulting death as more specifically described below.

## SURVIVAL ACTION

149.    As a direct and a proximate result of Defendants' negligence, and each of them, Mr. Munoz suffered severe and permanent injuries and damages, severe shock to his nervous system, severe, extreme and excruciating physical pain and mental suffering, including fear of impending death, conscious pre-death fear and apprehension of impending death, loss of enjoyment of life, aggravation, inconvenience, humiliation, medical expenses, funeral and burial expenses and loss of income and earnings up and until the time of his death.

## WRONGFUL DEATH

150.    As a direct and a proximate result of Defendants' negligence and the wrongful death of Mr. Munoz, and each of them, Mr. Munoz's immediate surviving next of kin have been deprived

26

of the services, comfort of her society and companionship as well as other pleasures and rights that have a pecuniary value, which attend to immediate family relationships.

## PUNITIVE DAMAGES

151.     The actions and omissions of Defendants Douglas County and Wellpath, including their employees, authorized agents, apparent agents and/or representatives, all individually named Defendants and all Defendant DOES, were unlawful, unconstitutional, shocking to the conscience, and were performed maliciously, recklessly, fraudulently, sadistically, intentionally, willfully, wantonly and in complete and utter disregard of Mr. Munoz's constitutional rights and privileges guaranteed to Mr. Munoz pursuant to 42 U.S.C § 1983.

152.     Defendants' outrageous and unconscionable conduct, and each of them including Defendant DOES, warrants and award of exemplary and punitive damages against the Defendants in an amount appropriate to punish and make an example of Defendants and deter Defendants and others from like conduct in the future.

## REQUEST FOR PLACE OF TRIAL

Pursuant to NECivR 40.1(b), Plaintiff respectfully requests that the trial of this matter take place in Omaha, Nebraska.

## JURY DEMAND

Plaintiff hereby demands a jury trial on appropriate causes of action pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally, on all causes of actions, for special and general damages, punitive damages, together with prejudgment interests, costs, attorney fees and costs pursuant to 42 U.S.C.  § 1988

and 42 U.S.C § 12205 against the appropriate defendants on the appropriate causes of action, and

for such other and further relief as the Court deems just, proper and equitable.

DATED this 19th day of November, 2021.

COLLEEN RAVESTEIN, individually and as
Administrator for the Estate of JESUS
HUMBERTO MUNOZ, deceased,


By:     /s/ Christopher P. Welsh
        Christopher P. Welsh - #22279
        WELSH & WELSH, P.C., L.L.O.
        9290 West Dodge Road
        204 The Mark
        Omaha, NE  68114
        Phone: 402-384-8160
        cwelsh@welsh-law.com

E-FILED  2020 AUG 11 8:04 AM MARION - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR MARION COUNTY

IN THE MATTER OF THE

ESTATE OF JESUS HUMBERTO MUNOZ

Case No. 05631  ESPR043269

**Letters of Appointment**

Docket Event Code:  LEAP

KNOW ALL PERSONS BY THESE PRESENTS:

That having been duly appointed and qualified as Administrator of the above entitled matter,

COLLEEN RAVESTEIN

is vested with all powers authorized by law in the premises.

Letters issued:  08/11/2020

/s/ SHELI MCDONALD

Clerk of Court/Designee
MARION County



<span style="color:red">**EXHIBIT**</span>

<span style="color:red">**A**</span>